IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,       )
                                )
                 PLAINTIFF,     )
                                )
         VS.                    )
                                )               DOCKET NUMBER
PAMELA WINN,                    )    1:03-CR-091-WBH; 1:09-CR-088-WBH
                                )
                 DEFENDANT.     )          ATLANTA, GEORGIA
                                )          FEBRUARY 25, 2009
                                )
_____  )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE WILLIS B. HUNT, JR.,
UNITED STATES DISTRICT SENIOR JUDGE

APPEARANCES:

FOR THE PLAINTIFF:              GALE MCKENZIE
                               UNITED STATES ATTORNEY'S OFFICE
                               ATLANTA, GEORGIA  30303

FOR THE DEFENDANT:             JOHN R. LOVELL
                               HOLLBERG & WEAVER, LLP
                               ATLANTA, GEORGIA  30305

OFFICIAL COURT REPORTER:       MONTRELL VANN, CCR,RPR,RMR,CRR
                               2394 UNITED STATES COURTHOUSE
                               75 SPRING STREET, SOUTHWEST
                               ATLANTA, GEORGIA  30303
                               (404)215-1549

1    *(IN ATLANTA, FULTON COUNTY, GEORGIA, FEBRUARY 25, 2009, IN*

2    *OPEN COURT.)*

3          THE COURT:  GOOD MORNING.  MS. MCKENZIE, MR. LOVELL,

4    ARE YOU ALL READY TO PROCEED IN THE PLEA ARRANGEMENTS FOR PAMELA

5    WINN?

6          MR. LOVELL:  YES, YOUR HONOR.

7          THE COURT:  ALL RIGHT.

8          MS. MCKENZIE:  YES, YOUR HONOR.  WE JUST NEED ONE HALF

9    SECOND TO FINISH A COUPLE OF SIGNATURES.

10          THE COURT:  OH, YES.  THAT'S FINE.  AND THEN IF YOU

11    DON'T MIND, COME ON UP TO THE LECTERN AND IF YOU WOULD GO

12    THROUGH THE PAPERWORK, MS. MCKENZIE, WE'LL GO FROM THERE.

13       LET HER COME ON UP, MR. LOVELL.

14       IF YOU WANT TO JUST CONFIRM THE PAPERS, MS. MCKENZIE.

15          MS. MCKENZIE:  YES, YOUR HONOR.

16       YOU'RE PAMELA WINN AND REPRESENTED TODAY BY JOHN LOVELL; IS

17    THAT CORRECT?

18          MS. WINN:  YES, MA'AM.

19          MS. MCKENZIE:  AND I UNDERSTAND THAT YOU WISH TO WAIVE

20    INDICTMENT AND ALLOW THE GOVERNMENT TO FILE CRIMINAL INFORMATION

21    NUMBER 1:09-CR-88; IS THAT CORRECT?

22          MS. WINN:  YES.

23          MS. MCKENZIE:  YOU'VE RECEIVED A COPY OF THESE

24    CHARGES?

25          MS. WINN:  YES, MA'AM.

1          MS. MCKENZIE:  AND IT CHARGES A SUBSTANTIVE COUNT OF

2   BANK FRAUD AND FORFEITURE, THE FORFEITURE PROVISION; CORRECT?

3          MS. WINN:  YES, MA'AM.

4          MS. MCKENZIE:  AND IS THIS YOUR SIGNATURE HERE ON YOUR

5   WAIVER OF INDICTMENT FORM?

6          MS. WINN:  YES.

7          MS. MCKENZIE:  AND, MR. LOVELL, YOU'VE ALSO SIGNED

8   THIS WAIVER OF INDICTMENT; IS THAT CORRECT?

9          MR. LOVELL:  YES.

10         MS. MCKENZIE:  OKAY.  NOW, MS. WINN, YOU'VE ALSO

11  RECEIVED A COPY OF THE GUILTY PLEA AND PLEA AGREEMENT IN THE

12  BANK FRAUD CASE, THIS CRIMINAL INFORMATION NUMBER 1:09-CR-88,

13  AND THIS PLEA AGREEMENT ALSO COVERS -- OR ADDRESSES THE AMENDED

14  PETITION FOR REVOCATION OF YOUR SUPERVISED RELEASE IN CASE

15  NUMBER 1:03-CR-91; IS THAT CORRECT?

16         MS. WINN:  YES.

17         MS. MCKENZIE:  IS THIS YOUR SIGNATURE HERE ON PAGE 12

18  OF THIS PLEA AGREEMENT AND ALSO ON PAGE 13?

19         MS. WINN:  YES.

20         MS. MCKENZIE:  AND, MR. LOVELL, THESE ARE YOUR

21  SIGNATURES ALSO ON PAGE 12 AND 13 OF THE PLEA AGREEMENT; IS THAT

22  CORRECT?

23         MR. LOVELL:  YES.

24         THE COURT:  ANYTHING ELSE ON THE PAPERS?

25         MS. MCKENZIE:  NO, YOUR HONOR.

1          THE COURT:  ALL RIGHT.  LET HER GET IN FRONT OF THAT

2     MICROPHONE IF YOU WANT TO.  IF YOU WANT TO HAVE A SEAT FOR THE

3     TIME BEING, MS. MCKENZIE, THAT WILL BE FINE.  THIS ARRANGEMENT,

4     BY THE WAY, TODAY INVOLVES BOTH A GUILTY PLEA TO THE INFORMATION

5     AND AN AGREEMENT OR ADMISSION CONCERNING THE CHARGES IN THE

6     REVOCATION PETITION; IS THAT RIGHT?

7          MS. MCKENZIE:  YES, YOUR HONOR.

8          THE COURT:  OKAY.  MS. WINN, YOU ARE HERE IN FRONT OF

9     ME THIS MORNING FOR THE PURPOSE OF PLEADING GUILTY TO THIS

10    INFORMATION AND AGREEING TO THE CHARGES IN THE REVOCATION

11    MATTER.  AND IN ORDER FOR ME TO ACCEPT YOUR PLEA I HAVE TO

12    DECIDE THAT YOU'RE DOING IT FREELY AND VOLUNTARILY, AND THAT IS

13    THAT YOU UNDERSTAND YOUR LEGAL RIGHTS AND YOU ARE GIVING THEM UP

14    IN CONNECTION WITH THE AGREEMENT YOU'VE REACHED WITH THE

15    GOVERNMENT.  FOR ME TO DO THAT, I'M GOING TO BE ASKING THE

16    GOVERNMENT'S LAWYER SOME QUESTIONS, YOUR LAWYER SOME QUESTIONS

17    AND YOU, AND PRINCIPALLY YOU, AND YOUR RESPONSES NEED TO BE

18    UNDER OATH.  SO IF YOU WILL HOLD UP YOUR RIGHT HAND, I'M GOING

19    TO ASK MS. COALSON TO ADMINISTER THE OATH TO YOU.

20                          PAMELA WINN

21       AFTER HAVING BEEN FIRST DULY SWORN, TESTIFIED AS FOLLOWS:

22                          EXAMINATION

23    BY THE COURT:

24    Q.  FOR THE RECORD, MS. WINN, HOW OLD ARE YOU?

25    A.  40.

1   Q.   40.   HOW FAR DID YOU GO IN SCHOOL?

2   A.   I HAVE A COLLEGE DEGREE IN NURSING.

3   Q.   COLLEGE DEGREE?

4   A.   YES.

5   Q.   WHEN DID YOU GET THAT?

6   A.   AT THE DEKALB COLLEGE.

7   Q.   AND WHEN WAS THAT?

8   A.   IN '98.

9   Q.   '98.   DO YOU RESIDE IN THE ATLANTA VICINITY OR DID YOU

10  BEFORE YOU WERE IN JAIL?

11  A.   YES, SIR.

12  Q.   AND BEFORE YOU WERE ARRESTED WHAT WAS YOUR OCCUPATION AT

13  THAT TIME?

14  A.   I WAS A NURSE.

15  Q.   NURSE?

16  A.   YES, R.N.

17          MR. LOVELL:   JUDGE, THERE ARE TWO ARRESTS.   THE

18  UNDERLYING -- SHE WAS A NURSE UP UNTIL THAT TIME, JUST TO BE

19  CLEAR, BUT AS A RESULT OF THAT SHE WAS NOT ABLE TO PRACTICE

20  NURSING WHEN SHE WAS ON SUPERVISED RELEASE.

21          THE COURT:   WHEN SHE WAS ON SUPERVISED RELEASE.

22          MR. LOVELL:   YES.

23          MS. MCKENZIE:   HOWEVER, SHE DID ACT AS A NURSE WHILE

24  SHE WAS ON SUPERVISED RELEASE EVEN THOUGH NOT LICENSED TO DO SO.

25          THE COURT:   RIGHT.   I UNDERSTAND THAT.

1           MR. LOVELL:   THERE MAY BE SOME DISPUTE REGARDING THAT,

2   JUDGE, BUT THAT'S NOT NECESSARILY RELEVANT FOR THIS -- PURPOSE

3   OF THIS PLEA.

4   BY THE COURT:

5   Q.   MS. WINN, AT THIS POINT IN TIME ARE YOU UNDER A DOCTOR'S

6   CARE FOR ANY REASON?

7   A.   NO.

8   Q.   ARE YOU TAKING ANY KIND OF MEDICATION NOW THAT WOULD MAKE

9   IT DIFFICULT FOR YOU TO UNDERSTAND US THIS MORNING?

10  A.   NO.

11  Q.   AND I ASSUME YOU HAVE NOT HAD ANY OTHER DRUGS OR ALCOHOL SO

12  RECENTLY THAT THAT WOULD IMPAIR YOUR ABILITY TO UNDERSTAND?

13  A.   NO, SIR.

14  Q.   NOW, SINCE YOUR ARREST CONCERNING THE REVOCATION HOW LONG

15  HAVE YOU BEEN IN CUSTODY?

16  A.   NINE MONTHS.

17  Q.   NINE MONTHS?

18  A.   ABOUT THAT, YES.

19  Q.   ALL RIGHT.   AND, MS. WINN, HAVE YOU HAD ENOUGH TIME AND

20  OPPORTUNITY NOW TO MEET WITH MR. LOVELL, GO OVER ALL THE FACTS

21  OF THE CASE WITH HIM AND DECIDE HOW YOU SHOULD DISPOSE OF THESE

22  MATTERS?

23  A.   YES.

24  Q.   AND BASED ON THOSE CONVERSATIONS HAVE YOU DECIDED THAT IT

25  IS BETTER FOR YOU TO ENTER A PLEA BASED ON THE AGREEMENT YOU'VE

1   REACHED WITH THE GOVERNMENT INSTEAD OF GOING TO TRIAL?

2   A.   YES.

3   Q.   HAVE YOU AND HE CONFERRED ABOUT THE SENTENCING GUIDELINES

4   THAT WOULD HAVE SOME APPLICATION IN THE CASE THAT'S SET OUT IN

5   THE INFORMATION?

6   A.   YES, SIR.

7   Q.   ARE YOU SATISFIED WITH HIS SERVICES ON YOUR BEHALF AT THIS

8   POINT IN TIME?

9   A.   YES, SIR.

10  Q.   ALL RIGHT.  I'M GOING TO GO THROUGH A FEW THINGS HERE WITH

11  YOU REGARDING YOUR RIGHT TO A JURY TRIAL.  LET ME ASK YOU THIS:

12  WHAT EXACTLY WERE YOU ON SUPERVISED RELEASE FOR?

13  A.   FOR HEALTHCARE FRAUD.

14  Q.   FOR WHAT?

15  A.   HEALTHCARE FRAUD.

16  Q.   HEALTHCARE FRAUD.  AND AS A RESULT OF THAT CHARGE DID YOU

17  SERVE SOME TIME BEFORE SUPERVISED RELEASE?

18  A.   YES, SIR, I DID.

19  Q.   AND HOW MUCH TIME DID YOU SERVE THEN?

20  A.   MY SENTENCE WAS 21 MONTHS.

21  Q.   FOLLOWED BY SUPERVISED RELEASE?

22  A.   YES.

23  Q.   AND WHEN YOU GOT THE 21 MONTHS WAS THAT THE RESULT OF A

24  PLEA OR DID YOU GO TO TRIAL?

25  A.   A PLEA.

1  Q.   YOU PLEADED.  SO WHAT I'M GOING TO TELL YOU NOW YOU'VE BEEN

2  TOLD BEFORE AND YOU KNOW, BUT I'M GOING TO GO BACK THROUGH IT

3  FOR THE RECORD.  AND THAT IS TO SAY, MS. WINN, IF YOU PLEADED

4  NOT GUILTY YOU WOULD BE ENTITLED TO A JURY TRIAL.  DO YOU

5  UNDERSTAND THAT?

6  A.   YES.

7  Q.   IF YOU HAD A JURY TRIAL YOU WOULD BE PRESUMED TO BE

8  INNOCENT.  THE BURDEN OF PROOF WOULD BE ON THE GOVERNMENT.  THEY

9  WOULD HAVE TO ESTABLISH YOUR GUILT BEYOND A REASONABLE DOUBT TO

10 THE JURY'S SATISFACTION.  YOU WOULD BE ENTITLED TO A LAWYER SUCH

11 AS MR. LOVELL WHETHER YOU COULD AFFORD HIM OR NOT.  THE

12 GOVERNMENT WOULD PUT UP WITNESSES IN YOUR CASE.  YOU WOULD

13 LISTEN TO THEM.  YOUR LAWYER COULD CROSS-EXAMINE THEM.  YOU

14 COULD BRING IN WITNESSES ON YOUR SIDE, IF THERE ARE ANY.  YOU

15 COULD DECIDE WHETHER TO TESTIFY AND YOU COULD REMAIN SILENT, AND

16 IF YOU DID, THE JURY COULDN'T HOLD THAT AGAINST YOU.  BUT YOU,

17 LIKE ANY OTHER WITNESS, COULD TESTIFY IF YOU WANTED TO.  AND IF

18 AT THE END OF THE TRIAL, MS. WINN, THE GOVERNMENT HAD NOT

19 ESTABLISHED YOUR GUILT BEYOND A REASONABLE DOUBT YOU WOULD BE

20 ENTITLED TO A NOT GUILTY VERDICT.  DO YOU UNDERSTAND THAT?

21 A.   YES.

22 Q.   ASSUME THAT THE GOVERNMENT DID ESTABLISH YOUR GUILT AND THE

23 JURY AGREED WITH THE GOVERNMENT AND FOUND YOU GUILTY, YOU WOULD

24 STILL HAVE A RIGHT TO APPEAL THAT TO THE COURT OF APPEALS TO SEE

25 IF YOU COULD GET IT REVERSED.  DO YOU UNDERSTAND?

1  A.   YES.

2  Q.   IF YOU PLEAD GUILTY HERE TODAY TO THIS INFORMATION,

3  MS. WINN, THERE WILL BE NO KIND OF A TRIAL.   AND IN TERMS OF AN

4  APPEAL, YOUR APPEAL RIGHTS WOULD BE LIMITED, IN ANY EVENT.   BUT

5  BESIDES THAT, IN THE PLEA AGREEMENT THAT YOU HAVE REACHED WITH

6  THE GOVERNMENT, YOU HAVE INDICATED TO THE GOVERNMENT AND TO THE

7  COURT THAT, UNLESS CERTAIN THINGS OCCUR, YOU WOULD NOT APPEAL

8  THE SENTENCE.   FOR EXAMPLE, IF I SENTENCE YOU TO A SENTENCE THAT

9  IS NOT OVER THE GUIDELINES, YOU AGREE YOU'RE NOT GOING TO

10  APPEAL; RIGHT?

11  A.   RIGHT.

12  Q.   AND THEN THERE HAS TO DO SOMETHING WITH THE AMOUNT OF LOSS.

13  IF I WERE TO FIND THE LOSS TO EXCEED A MILLION, OF COURSE, YOU

14  COULD APPEAL, BUT OTHERWISE NOT.   NUMBER OF VICTIMS, THERE'S A

15  PROVISION IN PARAGRAPH THREE ON PAGE TEN THAT RELATES TO THE

16  POSSIBILITY THERE THAT WOULD ALLOW YOU TO APPEAL RELATIVE TO THE

17  SOPHISTICATED MEANS ENHANCEMENT.   I KNOW THIS IS KIND OF

18  DIFFICULT FOR YOU.   IT'S DIFFICULT FOR ME.   BUT IT DOES SET

19  FORTH ISSUES THAT MIGHT ARISE THAT WOULD GIVE YOU A RIGHT TO

20  APPEAL.   OTHERWISE, YOU'RE FOREGOING YOUR RIGHT TO APPEAL;

21  CORRECT?

22  A.   YES, SIR.

23  Q.   AND ALSO YOU'RE TELLING THE GOVERNMENT AND ME THAT BEYOND

24  NOT BEING ABLE TO APPEAL THE CASE LATER ON, YOU'RE NOT GOING TO

25  ATTACK THE JUDGMENT IN THE CASE FROM SORT OF A COLLATERAL

1    STANDPOINT, IN OTHER WORDS, SOMETHING OTHER THAN A DIRECT

2    APPEAL.  DO YOU UNDERSTAND YOU'RE GIVING UP THOSE RIGHTS AS

3    WELL?

4    A.   YES, SIR.

5    Q.   OKAY.  LET ME ASK YOU THIS:  DO YOU THINK THAT YOUR

6    AGREEMENT HERE TO PLEAD GUILTY TODAY IS BEING MADE BY YOU FREELY

7    AND VOLUNTARILY?

8    A.   YES, SIR.

9    Q.   DO YOU THINK YOU KNOW EVERYTHING YOU NEED TO KNOW ABOUT THE

10   FACTS OF THIS CASE AND ABOUT THE LAW THAT APPLIES TO IT TO ENTER

11   A PLEA OF GUILTY?

12   A.   YES, SIR.

13   Q.   ALL RIGHT.  HAS ANYBODY, MS. WINN, MADE YOU ANY PROMISE

14   OTHER THAN WHAT'S SET FORTH IN THE PLEA AGREEMENT THAT WOULD

15   CAUSE YOU TO COME IN HERE TODAY AND PLEAD GUILTY?

16   A.   NO, SIR.

17   Q.   HAS ANYBODY MADE ANY THREATS AGAINST YOU OR ANY MEMBER OF

18   YOUR FAMILY THAT WOULD CAUSE YOU TO PLEAD GUILTY?

19   A.   NO, SIR.

20   Q.   HAS ANYBODY PROMISED YOU WHAT YOUR SENTENCE WOULD BE IN

21   THIS CASE?

22   A.   NO, SIR.

23   Q.   YOU HAVE SOME IDEA ABOUT THE RANGE OF THE SENTENCE; IS THAT

24   RIGHT?

25   A.   YES, SIR.

1   Q.   ALL RIGHT.   LET ME JUST TAKE ONE PEAK AT YOUR PLEA

2   AGREEMENT NOW.   WELL, LET ME BACK UP A SECOND AND TELL YOU THAT

3   YOU ARE HANDLING THIS AGREEMENT, HAVING IT HANDLED ON THE BASIS

4   OF AN INFORMATION INSTEAD OF AN INDICTMENT.   AND I WANT TO TELL

5   YOU THAT IN CRIMINAL CASES OF THIS SORT, ABSENT THAT WAIVER, YOU

6   WOULD BE ENTITLED TO HAVE THE GOVERNMENT GO BEFORE THE GRAND

7   JURY AND MAKE OUT ITS CASE AND SEE IF THE GRAND JURY WOULD

8   RETURN A TRUE BILL OF INDICTMENT AGAINST YOU.   DO YOU UNDERSTAND

9   THAT?

10  A.   YES, SIR.

11  Q.   THEY DON'T HAVE TO DO THAT IF YOU SAY, NO, IT'S NOT

12  NECESSARY, I WILL AGREE TO PLEA TO AN INFORMATION WHICH SETS OUT

13  THE SAME CHARGE BUT ELIMINATES THE GRAND JURY CONSIDERATION.   DO

14  YOU UNDERSTAND?

15  A.   YES, SIR.

16  Q.   AND ARE YOU TELLING ME TODAY THAT YOU ARE AGREEABLE TO

17  WAIVE INDICTMENT IN THIS CASE AND LET THE GOVERNMENT PROCEED BY

18  INFORMATION?

19  A.   YES, SIR.

20           THE COURT:   ALL RIGHT.   HAD YOU DONE THAT IN FRONT OF

21  A MAGISTRATE JUDGE OR ANYTHING OR NOT?

22           MS. MCKENZIE:   NO, WE HAVE NOT.

23           THE COURT:   HAD NOT.   OKAY.

24  BY THE COURT:

25  Q.   I JUST WANT TO GO OVER VERY QUICKLY THE MAXIMUM PENALTIES,

1  AND I SAW THAT THEY WERE SET OUT IN THIS MATTER.  IN A CASE OF

2  THIS KIND AS A RESULT OF A PLEA, A PRISON SENTENCE OF UP TO 30

3  YEARS COULD BE IMPOSED.  DO YOU UNDERSTAND THAT?

4  A.   YES.

5  Q.   THERE IS NO MANDATORY MINIMUM.  SUPERVISED RELEASE WOULD

6  FOLLOW ANY JAIL SENTENCE, AND THAT COULD BE AS MUCH AS FIVE

7  YEARS.  A FINE OF A MILLION DOLLARS COULD BE IMPOSED.  TYPICALLY

8  IN A CASE WHERE THE GOVERNMENT IS SEEKING RESTITUTION, THE COURT

9  WOULD PROBABLY NOT IMPOSE A FINE, BUT IT COULD.  DO YOU

10 UNDERSTAND THAT?

11 A.   YES.

12 Q.   RESTITUTION WOULD BE DUE TO ALL THE VICTIMS AND YOU WOULD

13 HAVE TO PAY A SPECIAL ASSESSMENT OF A HUNDRED DOLLARS.  YOU MAY

14 HAVE ALREADY PAID THAT, BUT IF YOU HAVEN'T, IT WOULD BE DUE.

15 AND THEN THIS FORFEITURE -- AND I'M NOT SURE RIGHT THIS MINUTE

16 BECAUSE I HAVEN'T GOTTEN TO THAT PART OF THE PLEA AGREEMENT THIS

17 MORNING, BUT YOU UNDERSTAND THAT THERE WOULD BE A FORFEITURE OF

18 ANY PROCEEDS OR PROPERTY OR ANYTHING ELSE THAT THE GOVERNMENT

19 AND YOU AGREE IS RELATED TO THE CRIME.  DO YOU UNDERSTAND THAT?

20 A.   YES.

21       THE COURT:  WHAT EXACTLY IS SHE GOING TO FORFEIT,

22 MS. MCKENZIE?

23       MS. MCKENZIE:  THERE'S ALREADY -- WE FOUND JUST UNDER

24 $5,000.  WE HAVEN'T BEEN ABLE TO FIND ANYTHING ELSE, BUT SHE

25 WILL AGREE TO A PRELIMINARY ORDER OF FORFEITURE FOR THE TOTAL

1   PROCEEDS WHICH ARE ABOUT $531,000.  AND THE PLEA AGREEMENT

2   STATES THAT WE WILL SEEK TO APPLY THAT TOWARD RESTITUTION IF WE

3   FIND ANYMORE MONEY --

4           THE COURT:  OKAY.

5           MS. MCKENZIE:  -- ASSETS.  WE HAVEN'T FOUND ANY TO

6   DATE THAT HASN'T ALREADY BEEN SPENT.

7   BY THE COURT:

8   Q.   ALL RIGHT.  IS IT YOUR UNDERSTANDING, MS. WINN, THAT YOU

9   WILL NOT BE SENTENCED TODAY?

10  A.   YES, SIR.

11  Q.   AS HAPPENED TO YOU BEFORE IN YOUR OTHER CASE, A PRESENTENCE

12  INVESTIGATION WILL BE CONDUCTED BY THE PROBATION SUPERVISOR WHO

13  WILL GIVE US ALL A REPORT, AND YOU'LL GO OVER THAT REPORT WITH

14  MR. LOVELL.  IF THERE ARE ERRORS IN IT IN YOUR VIEW, WE CAN

15  ADDRESS THOSE AND THEY CAN BE CORRECTED AND THEN WE WILL COME

16  BACK AT A LATER DATE WHEN IT WILL BE TOLD TO US BY MS. COALSON

17  IN A FEW MINUTES TO GO AHEAD AND HEAR FROM YOU, THE GOVERNMENT,

18  AND YOUR LAWYER ABOUT WHAT SENTENCE SHOULD BE IMPOSED.  DO YOU

19  UNDERSTAND?

20  A.   YES.

21  Q.   AT THE TIME YOU ARE IN FACT SENTENCED, MS. WINN, IF THE

22  SENTENCE I EVENTUALLY IMPOSE SEEMS TO YOU TO BE UNFAIR OR MORE

23  THAN YOU SHOULD GET OR SOMETHING YOU DIDN'T EXPECT, DO YOU

24  UNDERSTAND THAT THOSE WILL NOT BE REASONS FOR YOU TO BACK UP AND

25  THEN GET A JURY TRIAL?  DO YOU UNDERSTAND THAT?

1   A.   YES, SIR.

2   Q.   AND ONE OTHER THING BEFORE I TURN IT OVER TO MS. MCKENZIE

3   TO LET HER DO THE FACTUAL BASIS AND THE ELEMENTS OF THE CASE,

4   YOU'RE ALSO AGREEING THAT YOU WILL NOT CONTEST THE MATTERS THAT

5   ARE SET FORTH IN THE PETITION SEEKING TO REVOKE YOUR SUPERVISED

6   RELEASE; IS THAT RIGHT?

7   A.   YES.

8        THE COURT:  IS IT RIGHT, MR. LOVELL?

9        MR. LOVELL:  I THINK, JUDGE, HER HESITATION WAS

10  THERE'S -- THERE ARE SOME ELEMENTS -- ACTUALLY THERE'S ONE

11  GROUND, NUMBER TWO, GROUND TWO SHE CONTESTS THAT, BUT -- AND

12  THEN THERE ARE JUST CERTAIN SPECIFICS IN THERE THAT SHE HAS SOME

13  DISAGREEMENT WITH.  BUT THE FACT THAT SHE VIOLATED HER

14  SUPERVISED RELEASE, SHE IS NOT CONTESTING.

15  BY THE COURT:

16  Q.   YOU AGREE YOU VIOLATED?

17  A.   I AGREE THAT I VIOLATED, SIR.

18  Q.   YES.  OF COURSE THE PRINCIPAL VIOLATION IS THE FACT THAT

19  YOU GOT INVOLVED IN SOME ALLEGED CRIME.

20  A.   RIGHT.

21  Q.   AND YOU DON'T TAKE ANY ISSUE WITH THAT TODAY?

22  A.   NO.

23  Q.   WELL, TWO OF THE OTHER CHARGES RELATE TO, I THINK, IN SOME

24  PART THE MANNER IN WHICH THIS THING WAS CONDUCTED.  AND YOU HAVE

25  SOME RESERVATION, I GUESS, ABOUT THE WAY THOSE ARE SET FORTH,

1  BUT YOU DON'T CHALLENGE IN ANY WAY THE FACT THAT BY COMMITTING

2  THIS CRIME YOU VIOLATED THE TERMS OF YOUR SUPERVISED RELEASE?

3  A.   NO, SIR, I DON'T CHALLENGE IT.

4  Q.   AND THEN THERE ARE SOME OTHER THINGS THAT RELATE TO THE

5  FACT THAT YOU WERE EMPLOYED AT ONE TIME BY SOUTHEASTERN

6  GYNECOLOGY AND ONCOLOGY, L.L.C. AND YOU DIDN'T REPORT THAT.  AND

7  THEN ANOTHER TIME YOU WERE SELF-EMPLOYED AT THIS GO GET IT

8  TRANSPORTATION, AND YOU DIDN'T TELL THE PROBATION OFFICER ABOUT

9  THAT.  DO YOU UNDERSTAND WHAT THOSE CHARGES ARE?

10  A.   YES, SIR.

11  Q.   DO YOU AGREE OR DISAGREE WITH THEM?

12  A.   I DID -- I WAS EMPLOYED FOR SOUTHEASTERN GYNECOLOGIC

13  ONCOLOGY.

14  Q.   AND YOU DIDN'T REPORT THAT TO THE COURT?

15  A.   NO, I DID NOT.

16  Q.   OKAY.  AND THEN IT TALKS ABOUT OPENING LINES OF CREDIT, AND

17  THAT PROBABLY HAS TO DO ALSO -- WELL, MAYBE OTHER THINGS, BUT IT

18  ALSO IS INVOLVED IN THE PRINCIPAL CASE; RIGHT?

19  A.   RIGHT.

20  Q.   AND YOU DON'T CHALLENGE THAT IN ANY WAY?

21  A.   NO.

22       THE COURT:  OKAY.  MS. MCKENZIE, IF YOU WOULD GIVE US

23  THE ELEMENTS OF THE GOVERNMENT'S CHARGES SET OUT IN COUNT ONE

24  AND THEN THE FACTUAL BASIS FOR THAT.

25       MS. MCKENZIE:  YES, YOUR HONOR.  IF WE COULD ADDRESS

1   JUST ONE THING FIRST.

2           THE COURT:  SURE.

3           MS. MCKENZIE:  THAT IS THE MAXIMUM PENALTY FOR THE

4   REVOCATION.

5           THE COURT:  OKAY.  THAT'S A GOOD POINT.

6           MS. MCKENZIE:  THAT WOULD BE TWO YEARS ON EACH COUNT

7   AND SHE WAS -- AND THAT CAN ALL RUN CONSECUTIVE TO ANY SENTENCE

8   SHE MAY GET ON THE CRIMINAL INFORMATION.

9           THE COURT:  IT CAN RUN, BUT IT DOESN'T HAVE TO RUN; IS

10  THAT RIGHT?

11          MS. MCKENZIE:  YES.  BUT IT CAN RUN CONSECUTIVE AND IT

12  CAN BE MULTIPLE SENTENCES OF TWO YEARS.

13  BY THE COURT:

14  Q.   YOU UNDERSTAND THAT PENALTY PERTAINS TO THE REVOCATION?

15  A.   YES.

16  Q.   AND THAT THE COURT IS AUTHORIZED IF IT SEES FIT, I SUPPOSE,

17  TO ADD THAT TO WHATEVER PENALTY IS IMPOSED IN THE MAIN CASE; DO

18  YOU UNDERSTAND THAT?

19  A.   YES.

20          THE COURT:  OKAY.  ALL RIGHT.  MS. MCKENZIE.

21          MS. MCKENZIE:  THE ELEMENTS OF THE SUBSTANTIVE COUNT

22  OF BANK FRAUD THAT THE DEFENDANT IS ENTERING HER PLEA ARE:

23  FIRST, THAT THE DEFENDANT EXECUTED OR ATTEMPTED TO EXECUTE A

24  SCHEME TO DEFRAUD A FINANCIAL INSTITUTION TO OBTAIN MONEY,

25  ASSETS OR PROPERTY FROM A FINANCIAL INSTITUTION BY MEANS OF

1   FALSE OR FRAUDULENT PRETENSES, REPRESENTATIONS OR PROMISES

2   RELATED TO A MATERIAL FACT AS CHARGED.  SECOND, THAT THE

3   DEFENDANT DID SO WILLFULLY WITH AN INTENT TO DEFRAUD.  THIRD,

4   THAT THE FALSE OR FRAUDULENT PRETENSES, REPRESENTATIONS OR

5   PROMISES WERE MATERIAL.  AND, FOURTH, THAT THE FINANCIAL

6   INSTITUTION WAS FEDERALLY INSURED.  THOSE ARE THE ELEMENTS OF

7   THE CRIME.

8   BY THE COURT:

9   Q.   DO YOU THINK YOU UNDERSTAND THE NATURE OF THE CASE THAT

10  YOU'RE BEING CHARGED WITH HERE, MS. WINN?

11  A.   YES, SIR.

12  Q.   AND SHE HAS GONE THROUGH THE ELEMENTS, AND I JUST WANT TO

13  MAKE SURE WITH RESPECT TO THOSE FOUR ELEMENTS THAT YOU

14  UNDERSTAND THEM?

15  A.   YES, I UNDERSTAND.

16       THE COURT:  NOW SHE'S GOING TO SET OUT THE FACTS THAT

17  THE GOVERNMENT WOULD PROVE IN THIS CASE THAT SUPPORTS YOUR PLEA.

18  AND WHEN SHE GETS THROUGH WITH THAT I'LL ASK YOU A COUPLE OF

19  QUESTIONS ABOUT THAT.

20       MS. WINN:  YES, SIR.

21       MS. MCKENZIE:  THE GOVERNMENT'S EVIDENCE SHOWS THAT

22  BETWEEN JULY 14TH, 2005 AND JUNE THE 20TH, 2008, THAT THE

23  DEFENDANT DEVISED A SCHEME TO OBTAIN BENEFITS FROM MORTGAGE AND

24  HOME EQUITY LOANS, VEHICLE LOANS AND LEASES, LINES OF CREDIT AND

25  CREDIT CARDS BY BEING APPROVED BY FINANCIAL INSTITUTIONS,

1   FEDERALLY INSURED FINANCIAL INSTITUTIONS, BASED UPON MATERIALLY

2   FALSE AND FRAUDULENT QUALIFYING INFORMATION.  AND THOSE

3   INSTITUTIONS INCLUDED AMERICAN EXPRESS, CENTURION BANK,

4   ASSOCIATED FEDERAL CREDIT UNION, BANK OF AMERICA, CAPITAL ONE

5   BANK, CITIBANK, C.U.N.A. CREDIT UNION, E-TRADE BANK, FIRST

6   EQUITY BANK, FIRST PREMIERE BANK, GREATER WISCONSIN CREDIT

7   UNION, J.P. MORGAN CHASE BANK, NEW MILLENNIUM BANK, SUNTRUST

8   BANK, UNION PLANNERS BANK, WACHOVIA BANK, WASHINGTON MUTUAL

9   BANK, WELLS FARGO BANK, AND OTHERS.  THE DEFENDANT OBTAINED FOR

10  HERSELF AND CO-CONSPIRATORS PROCEEDS BY PRETENDING TO BE

11  QUALIFIED, FALSELY REPRESENTING HERSELF TO BE OTHER INDIVIDUALS,

12  AND THAT THEY WERE QUALIFIED OR REPRESENTING HERSELF TO BE

13  QUALIFIED FOR SUCH EXTENSIONS OF CREDIT WHEN IN FACT SHE AND THE

14  OTHER INDIVIDUALS WERE NOT SO QUALIFIED.  SPECIFICALLY ON JUNE

15  THE 20TH, 2001 (SIC), MS. WINN OBTAINED A

16  HUNDRED-THOUSAND-DOLLAR BUSINESS EQUITY LINE OF CREDIT SECURED

17  BY HER 4770 CAMPBELL ROAD PERSONAL RESIDENCE.

18          THE COURT:  DID YOU SAY '01?

19          MS. MCKENZIE:  '07.

20          THE COURT:  '07.  I'M SORRY.

21          MS. MCKENZIE:  SHE OBTAINED A HUNDRED-THOUSAND-DOLLAR

22  BUSINESS EQUITY LINE OF CREDIT SECURED BY HER PERSONAL RESIDENCE

23  FROM WACHOVIA BANK, AND AT THAT TIME WACHOVIA WAS F.D.I.C.

24  INSURED.  AND SHE DID SO BY CONCEALING THE FACT THAT ALL EQUITY

25  IN SAID PROPERTY WAS SECURED BY THE GOVERNMENT AS RESTITUTION

FOR VICTIMS OF THE HEALTHCARE FRAUD, HER EARLIER OFFENSE, AND

ALSO BY SUBMITTING A FORGED GUARANTEE IN THE NAME OF MARY JEAN

JACKSON AS OWNER OF GO GET IT TRUCKING -- I MEAN, GO GET IT

TRANSPORTATION -- TRANSPORTING AND HAULING, GO GET IT

TRANSPORTING AND HAULING -- WHEN MS. WINN WELL KNEW THAT MARY

JEAN JACKSON WAS HER UNEMPLOYED ELDERLY GRANDMOTHER WITH VERY

LIMITED INCOME WHO COULD NOT AND DID NOT GUARANTEE THE REPAYMENT

OF SUCH LOAN AND THAT MARY JEAN JACKSON DID NOT FUNCTION AS

OWNER OF GO GET IT AND WAS UNAWARE OF THE

HUNDRED-THOUSAND-DOLLAR WACHOVIA LOAN BEING MADE OVER HER FORGED

SIGNATURE.

THE GOVERNMENT HAS THE HOME EQUITY LINE OF CREDIT SECURITY

DEED MARKED AS GOVERNMENT'S EXHIBIT 1 SIGNED BY MS. WINN.  SHE

HAD PREVIOUSLY SPOKEN TO HER PROBATION OFFICER ASKING TO USE

THIS PROPERTY AND -- WITH THE GOVERNMENT RESTITUTION DEPARTMENT

ASKING TO USE THIS PROPERTY TO SECURE A LOAN, AND THEY HAD SAID

NO BECAUSE THE EQUITY WAS SUPPOSED TO BE TO PAY OFF THE VICTIMS

OF HER PRIOR OFFENSE.  GOVERNMENT'S EXHIBIT 2 THAT WE'VE

OBTAINED FROM WACHOVIA BANK IS A UNCONDITIONAL GUARANTEE IN THE

NAME OF GO GET IT TRANSPORTING AND HAULING WITH A GUARANTOR

BEING MARY JEAN JACKSON, AND IT'S MARKED AS GOVERNMENT'S EXHIBIT

2.  AND THE GOVERNMENT'S EVIDENCE IS THAT MS. WINN SIGNED MARY

JEAN JACKSON'S SIGNATURE TO THAT DOCUMENT.  AND GOVERNMENT'S

EXHIBIT 3 IS THE WACHOVIA BANK BUSINESS EQUITY CREDIT -- LINE OF

CREDIT AGREEMENT FOR HUNDRED THOUSAND DOLLARS ALSO SIGNED BY THE

1   DEFENDANT FORGING THE NAME OF MARY JEAN JACKSON.

2       THE GOVERNMENT'S EVIDENCE IS THAT MS. JACKSON -- IT WAS NOT

3   MS. JACKSON'S SIGNATURE WE HAVE AS GOVERNMENT'S EXHIBIT 5, THE

4   TRUE SIGNATURE OF MARY JEAN JACKSON ON HER DRIVER'S LICENSE.

5   MS. JACKSON HAS CONFIRMED THAT THIS IS NOT HER SIGNATURE AND SHE

6   DIDN'T KNOW ABOUT THE LOAN OR APPROVE THE LOAN OR SIGN THE

7   DOCUMENTS.  AND THE GOVERNMENT HAS TRACED THE FUNDS OF THESE

8   LOAN PROCEEDS TO THE DEFENDANT AND TO HER PERSONAL USE, NOT THE

9   USE OF MARY JEAN JACKSON.  MS. JACKSON, THE GOVERNMENT'S

10  EVIDENCE SHOWED, IS UNEMPLOYED AND BARELY ABLE TO TAKE CARE OF

11  HERSELF AND CERTAINLY IS NOT -- DID NOT FUNCTION AS THE OWNER OF

12  GO GET IT TRANSPORTATION AND HAULING.

13      IN ADDITION, GOVERNMENT'S EXHIBIT 4 OUTLINES THE OTHER

14  BANKS LISTED IN THIS SCHEME TO DEFRAUD AND THE TYPES OF CREDIT

15  OBTAINED BY THE DEFENDANT IN HER OWN NAME AND IN THE NAME OF

16  JANICE GORDON AND -- GOODWIN (SIC).  I'M SORRY, JANICE

17  GOODEN (SIC) AND ALSO IN KEVIN KING, THE DEFENDANT'S FORMER

18  BOYFRIEND WHO WAS SERVING LIFE IN PRISON, AND OTHERS.  AND THAT

19  WOULD BE -- AND WE'VE OBTAINED RECORDS FROM ALL THE FINANCIAL

20  INSTITUTIONS AS WELL AS THE APPLICATIONS WHERE MISLEADING

21  INFORMATION WAS PROVIDED.  THEY ALL GO BACK TO RESIDENCES

22  CONTROLLED BY THIS DEFENDANT AND ARE TIED TO HER, AND WHEN YOU

23  TRACE THE MONEY IT GOES BACK TO HER.  AND WE'RE NOT SAYING SHE

24  SPENT IT ALL.  SHE SHARED IT WITH CO-CONSPIRATORS.  THAT WOULD

25  BE THE GOVERNMENT'S EVIDENCE.

1        THE COURT:  AND THAT'S HOW YOU GO FROM A HUNDRED TO

2    $500,000, IS ALL THESE OTHER CREDIT CHARGES?

3        MS. MCKENZIE:  YES.  AND THE RELEVANT CONDUCT IS

4    800-AND-SOME THOUSAND DOLLARS, BUT SOME OF THEM WERE ATTEMPTS

5    THAT THE GOVERNMENT WAS ABLE TO STOP.

6        THE COURT:  IS SHE COOPERATING RELATIVE TO

7    CO-CONSPIRATORS AND THE LIKE?

8        MS. MCKENZIE:  SHE HAS BEEN DEBRIEFED.  THERE IS A

9    POSSIBILITY OF A 5K.  SHE NEGLECTED TO TELL US ABOUT SOME OF THE

10   MONEY THAT WAS HIDDEN, SO THERE ARE SOME ISSUES WITH HER

11   COOPERATION.  WE HAVEN'T GIVEN UP BETWEEN NOW AND HER SENTENCING

12   THAT PERHAPS MORE CAN BE DONE, BUT THERE IS A POSSIBILITY.

13   BY THE COURT:

14   Q.   RIGHT.  I MEANT TO MENTION THAT WHEN I WAS GOING OVER YOUR

15   PLEA AGREEMENT, AND THAT IS THE PARAGRAPHS IN THERE THAT DEAL

16   WITH THE POSSIBILITY OF YOUR GETTING SOME RELIEF BASED ON

17   COOPERATION.  DO YOU UNDERSTAND THAT, THE 5K THAT SHE IS

18   REFERRING TO AND THE POSSIBILITY ALSO OF, IF YOUR COOPERATION

19   AMOUNTS TO ANYTHING, THE POSSIBILITY THAT THERE MAY BE SOME

20   RELIEF EVEN AFTER YOU'RE SENTENCED?  YOU'VE LOOKED AT THOSE;

21   RIGHT?

22   A.   YES, I SAW THAT.

23   Q.   AND I JUST WANT TO MAKE IT CLEAR, I THINK THE AGREEMENT

24   SAYS THIS, BUT, OF COURSE, THERE'S NO BURDEN ON THE GOVERNMENT

25   TO ENTER INTO SUCH AN AGREEMENT OR TO URGE THE COURT TO DO IT,

1    AND THEN OF COURSE IT WOULD BE UP TO A REVIEWING COURT, IT MIGHT

2    BE ME, IT COULD BE SOME OTHER JUDGE LATER ON, WHO WOULD LOOK AT

3    THIS.  SO THERE'S NO GUARANTEE, I WANT YOU TO UNDERSTAND,

4    ARISING OUT OF THE PLEA AGREEMENT THAT YOU ARE GOING TO GET ANY

5    RELIEF FOR COOPERATION.  DO YOU UNDERSTAND THAT?

6    A.   YES.

7    Q.   OF COURSE IT IS ALMOST ALWAYS IN A DEFENDANT'S INTEREST TO

8    COOPERATE AND TO TRY TO GET SOME RELIEF ON THE SENTENCE.  NOW,

9    YOU HEARD MS. MCKENZIE GO OVER THE ESSENTIALS OF WHAT THE

10   GOVERNMENT WOULD BE PROVING UNDER THE ELEMENTS OF THIS CASE

11   REGARDING IT, AND IT STARTS OUT AND PRINCIPALLY SEEMS TO INVOLVE

12   THIS ACQUISITION OF THIS LINE OF CREDIT BASED ON THE EQUITY IN

13   THE HOUSE AND THE FACT THAT THE EQUITY IN THE HOUSE WAS ALREADY

14   TIED UP.  IN FACT, YOU TALKED TO THE PROBATION OFFICER AND HE

15   INFORMED YOU OF THAT, BUT THEN YOU GOT THAT AND THEN THE USE OF

16   OTHER FOLKS, RELATIVES AND OTHERS, AS OWNERS OR PEOPLE OF

17   INTEREST AND ALL WHEN THEY DIDN'T HAVE ANY AND THAT, AS A RESULT

18   OF ALL OF THIS ACTIVITY BETWEEN THE SUMMER OF 2005 AND THE

19   SUMMER OF 2008, RESULTS IN DEFRAUDING FINANCIAL INSTITUTIONS

20   SOMEWHERE, YOU KNOW, SEVERAL HUNDRED THOUSAND DOLLARS.  IT MIGHT

21   BE 400.  IT MIGHT BE 500.  IT MAY BE 7- OR 800.  MY QUESTION IS,

22   DO YOU AGREE WITH WHAT MS. MCKENZIE SAYS ABOUT YOUR CONDUCT IN

23   CONNECTION WITH THESE CHARGES?

24            MR. LOVELL:  JUDGE, IF I MAY SAY JUST ONE THING.

25            THE COURT:  SURE.

1          MR. LOVELL:  WE'VE DISCUSSED THIS AT LENGTH FOR A

2    NUMBER OF MONTHS AND WHAT'S HAPPENED.  AND IN ORDER TO AVOID AN

3    UNNECESSARY -- UNNECESSARY ARGUMENTS TODAY WHEN I DON'T THINK

4    THEY WOULD BE OF ANY BENEFIT, THERE MAY BE SOME DETAILS --

5          THE COURT:  RIGHT.

6          MR. LOVELL:  -- THAT MS. WINN DISAGREES WITH IN

7    SUBSTANCE, AND THE VIOLATIONS SHE AGREES WITH AND SHE IS HERE,

8    PLANNED AND INTENDS AND HAS ENTERED A GUILTY PLEA.  SO WE WOULD

9    RESERVE THE RIGHT TO DISPUTE FACTUALLY SOME OF THE ISSUES AT THE

10   SENTENCING HEARING, BUT THE SUM AND SUBSTANCE OF WHAT

11   MS. MCKENZIE SAID, IN THAT THERE WAS INDEED FRAUD AND IT WAS

12   PERPETRATED UPON A BANK, A FEDERALLY INSURED BANK, AND ALL OF

13   THE ELEMENTS ARE MET AND THE GOVERNMENT WOULD PROVE THAT AT A

14   TRIAL.  HOWEVER, THERE'S SOME DETAILS THAT IF THEY'RE RELEVANT

15   WE WOULD LIKE TO ARGUE AT SENTENCING.  SO SHE DOESN'T WANT TO

16   CONCEDE TO ALL OF THE FACTS AS LAID OUT BY THE GOVERNMENT.

17         THE COURT:  RELATING ESSENTIALLY TO SOME OF THE

18   CHARGES AND THE AMOUNTS THAT THEY WOULD INVOLVE IN AN EFFORT TO

19   REDUCE THE AMOUNT FOR THE PURPOSES OF SENTENCING ESSENTIALLY?

20         MR. LOVELL:  YES, JUDGE.  AND THE LONG LIST OF

21   INSTITUTIONS, MS. WINN -- SOME OF THOSE SORTS OF DETAILS, THE

22   LIST OF INSTITUTIONS AND ALSO EXACTLY WHAT HAPPENED WITH THE

23   HOME EQUITY LOAN, SHE SIGNED THAT DOCUMENT.  BUT THERE ARE JUST

24   SOME SPECIFICS THAT SHE WOULD LIKE ME TO PRESENT DIFFERENT

25   EVIDENCE -- TO PRESENT EVIDENCE ON HER BEHALF POTENTIALLY AT THE

1    SENTENCING HEARING.  AND I -- AFTER READING THE P.S.I. I'LL

2    CONSULT WITH HER AND WE'LL DISCUSS WHAT'S IMPORTANT, WHAT WE

3    NEED TO ARGUE ABOUT AND WHAT'S UNIMPORTANT.  BUT I DON'T -- I

4    CERTAINLY DON'T WANT TO GET INTO UNIMPORTANT MINOR ISSUES RIGHT

5    NOW BEFORE THE COURT OTHER THAN -- AND CERTAINLY TO ACKNOWLEDGE

6    THAT ALL OF THE ELEMENTS MS. WINN WILL ACKNOWLEDGE THAT TO THE

7    EXTENT THAT MS. MCKENZIE LAID OUT THE FACTS AND THAT THEY MEET

8    THE ELEMENTS OF THE CRIME THAT WOULD BE PROVEN AT TRIAL, ALL OF

9    THE ELEMENTS WOULD BE MET BY THE GOVERNMENT, AND I KNOW

10   MS. WINN --

11   BY THE COURT:

12   Q.   AND OF COURSE A PLEA IS NOT JUST A MATTER THAT WOULD BE

13   PROVEN, BUT DO YOU AGREE WITH THE GOVERNMENT'S CONTENTION THAT

14   YOU ARE INVOLVED IN THE FRAUDULENT ACTIVITY THAT RESULTED IN AT

15   LEAST A HUNDRED THOUSAND DOLLARS OF MONEY COMING FROM --

16            MS. MCKENZIE:   WACHOVIA --

17   Q.   -- WACHOVIA?

18   A.   YES, SIR.

19   Q.   DO YOU AGREE WITH THAT?  AND YOU AGREE WITH THE CONTENTION

20   SET OUT IN THE INDICTMENT -- I BEG YOUR PARDON, THE INFORMATION;

21   IS THAT RIGHT?

22   A.   YES, SIR.

23   Q.   YES.  AND YOUR DISAGREEMENT, IF ANY, HAS TO DO WITH MAYBE

24   REASONS FOR DOING IT AND THE AMOUNTS LATER ON AND INVOLVEMENT OF

25   OTHER PERSONS AND THINGS OF THAT SORT; IS THAT RIGHT?

```
 1   A.    BASICALLY OVERALL.

 2   Q.    YES.  BECAUSE YOU WROTE ME A LETTER --

 3   A.    YES.

 4   Q.    -- BACK IN -- MAYBE IN THE SUMMER OF LAST YEAR.

 5   A.    YES, SIR.

 6   Q.    AND IN THAT LETTER YOU EXPLAIN TO ME -- AND I ASSUME THIS

 7   IS THE THINGS THAT YOU WOULD WANT TO TALK ABOUT AT SENTENCING.

 8   YOU EXPLAINED TO ME WHAT WAS GOING ON IN YOUR LIFE, THE PROBLEMS

 9   YOU WERE HAVING, ALL OF THESE OTHER THINGS, AND APOLOGIZING TO

10   ME FOR BEING BACK IN THIS COURT AND ALL ABOUT THESE PROBLEMS;

11   RIGHT?

12   A.    YES, SIR.

13              THE COURT:  WELL, LET ME ASK MR. LOVELL.

14        HAVE YOU HAD ENOUGH TIME AND OPPORTUNITY TO INVESTIGATE THE

15   FACTS OF THIS CASE, CONFER WITH THE GOVERNMENT, MEET WITH THE

16   DEFENDANT IN ORDER TO DECIDE WHAT SHE OUGHT TO DO IN THIS CASE?

17              MR. LOVELL:  YES, YOUR HONOR.

18              THE COURT:  BASED ON EVERYTHING YOU KNOW ABOUT IT DO

19   YOU BELIEVE THAT MS. WINN SHOULD ENTER A PLEA TO THIS

20   INFORMATION AND ADMIT THE CHARGES IN THE REVOCATION PETITION?

21              MR. LOVELL:  YES, I DO.

22              THE COURT:  FROM YOUR CONVERSATIONS WITH MS. WINN ARE

23   YOU SATISFIED THAT SHE UNDERSTANDS HER RIGHT TO JURY TRIAL AND

24   SO FORTH AND THAT SHE'S GIVING IT UP FREELY AND VOLUNTARILY?

25              MR. LOVELL:  YES.
```

 1            THE COURT:  DO YOU KNOW OF ANY REASON WHY I SHOULD NOT

 2   ACCEPT HER PLEA TO THE INFORMATION TODAY?

 3            MR. LOVELL:  NO.

 4            THE COURT:  DO YOU HAVE ANYTHING YOU WANT TO ADD TO

 5   THIS, MS. MCKENZIE?

 6            MS. MCKENZIE:  I JUST WANT TO MAKE SURE THAT IT'S

 7   CLEAR, MS. WINN, DO YOU ADMIT THAT THIS IS YOUR SIGNATURE HERE

 8   ON THE HOME EQUITY LINE OF CREDIT SECURITY DEED IN GOVERNMENT'S

 9   EXHIBIT 1?

10            MS. WINN:  YES, THAT IS MY SIGNATURE.

11            MS. MCKENZIE:  AND THAT YOU FORGED YOUR GRANDMOTHER'S

12   NAME, MARY JEAN JACKSON, TO THE UNCONDITIONAL GUARANTEE AND TO

13   THE BUSINESS EQUITY LINE OF CREDIT ON GOVERNMENT'S EXHIBIT 2 AND

14   3?

15            MS. WINN:  I'M NOT FAMILIAR WITH THIS DOCUMENT, BUT I

16   DID SIGN MY GRANDMOTHER'S NAME, YES.

17            MS. MCKENZIE:  AND YOU KNEW SHE WAS BEING USED TO

18   GUARANTEE THE LOAN?

19            MS. WINN:  YES, I KNEW.

20            MS. MCKENZIE:  AND YOU FORGED HER NAME?

21            MR. LOVELL:  WE DISCUSSED THIS AND I KNOW WHERE

22   MS. WINN IS GOING TO COME FROM ON THAT.  SHE'S BEEN VERY CLEAR

23   TO ME THAT THERE WAS A RELATIONSHIP WITH HER GRANDMOTHER AND

24   THERE HAD -- AT TIMES THERE WAS AUTHORITY TO USE HER

25   GRANDMOTHER'S SIGNATURE TO ACT ON HER BEHALF, BUT SHE EXCEEDED

1   THE SCOPE OF THAT AUTHORITY.  SO THE WORD "FORGED" IMPLIES

2   ANOTHER FELONY IN ADDITION TO WHAT SHE'S ADMITTED TO.  SHE

3   CERTAINLY SIGNED THAT.  SHE DID NOT HAVE SPECIFIC AUTHORITY ON

4   THAT OCCASION, BUT THERE'S A QUESTION OF WHETHER SHE NEEDED

5   SPECIFIC AUTHORITY --

6           THE COURT:  WELL, THE UNDERLYING FACTS SHE DOESN'T

7   HAVE ANY ARGUMENT WITH.  IT'S THE WAY IT'S CHARACTERIZED BY THE

8   GOVERNMENT?

9           MR. LOVELL:  THAT'S CORRECT, JUDGE.  SHE CERTAINLY

10  SIGNED THAT SIGNATURE AND HER GRANDMOTHER WAS NOT SPECIFICALLY

11  AWARE OF THAT SIGNATURE AT THAT TIME.

12          MS. MCKENZIE:  OR THE LOAN OF A HUNDRED THOUSAND

13  DOLLARS OR THE FACT THAT SHE WAS SUPPOSED TO BE THE OWNER OF GO

14  GET IT TRANSPORTATION AND ABLE TO GUARANTEE THE REPAYMENT OF A

15  HUNDRED THOUSAND DOLLARS WHEN THE GRANDMOTHER HAD NOTHING.

16          MR. LOVELL:  JUDGE, AGAIN, I THINK THE -- GETTING INTO

17  REAL DETAILS ISN'T GOING TO BE PRODUCTIVE TODAY.

18          THE COURT:  WELL, LET ME SAY THIS:  HERE IS MY VIEW ON

19  IT.  I THINK THAT MS. WINN HAS ADMITTED ENOUGH THROUGH HER AND

20  HER LAWYER FOR ME TO ACCEPT THE PLEA ON THIS.  I UNDERSTAND THAT

21  THERE ARE GOING TO BE SOME DISCUSSIONS AT SENTENCING, AND

22  PROBABLY WITH THE PROBATION OFFICER FIXING THE PRESENTENCE

23  REPORT AS TO THE LEVEL OF INVOLVEMENT AND THE AMOUNT INVOLVED

24  AND THE EXTENT TO WHICH SHE MAY OR MAY NOT HAVE HAD SOME

25  PERMISSION TO DO THESE FROM THE RELATIVE.  BUT SHE DOESN'T

1    DISPUTE IN ANY WAY THE FACT THAT SHE IS RESPONSIBLE CRIMINALLY

2    FOR THE ACQUISITION OF THIS HUNDRED-THOUSAND-DOLLAR LOAN AND THE

3    CREDIT APPLICATIONS THAT ARE INVOLVED IN THE CASE THAT EITHER

4    REMAINS FOR THE PURPOSE OF SENTENCING, THE DECISION ABOUT HOW

5    MUCH MONEY IS ACTUALLY INVOLVED.  AND, NOW, THE PLEA AGREEMENT

6    TALKS ABOUT THE NUMBER OF PEOPLE INVOLVED, AND I HAVEN'T HEARD

7    ANYTHING ABOUT THAT TODAY.  I MEAN, THAT HAS TO DO WITH AN

8    ENHANCEMENT OR POSSIBLE ENHANCEMENT?

9            MS. MCKENZIE:  RIGHT.  SHE WILL RECEIVE THAT

10   ENHANCEMENT.  THERE WERE WELL OVER TEN PEOPLE.  THE DEFENSE

11   WANTED TO RESERVE THAT RIGHT TO APPEAL.  I DON'T KNOW WHY, BUT

12   THEY DID.  WE HAVE NO OBJECTION BECAUSE IT'S NOT AN ISSUE.  I

13   MEAN, THERE ARE WELL OVER TEN VICTIMS IN THIS CASE.

14           THE COURT:  THAT'S THE RESERVATION, IS THAT IF IT'S --

15           MS. MCKENZIE:  THAT SHE CAN APPEAL IT, NOT THAT THE

16   GOVERNMENT IS SAYING THERE ARE LESS THAN TEN VICTIMS.  THERE ARE

17   WELL OVER TEN AND IT'S LISTED IN THE INDICTMENT AND THEY'RE ALSO

18   LISTED ON GOVERNMENT'S EXHIBIT 4.

19           THE COURT:  WELL --

20           MR. LOVELL:  JUDGE --

21           THE COURT:  I GATHER THE GOVERNMENT IS SATISFIED WITH

22   THE TERMS OF THE AGREEMENT.

23           MR. LOVELL:  YES, JUDGE.  WE WILL SIT DOWN AND --

24           THE COURT:  I MEAN, THE GOVERNMENT, BECAUSE THAT'S

25   WHAT'S IN THE AGREEMENT.  SHE IS RESERVING SOME THINGS THAT THE

1    GOVERNMENT SAYS ARE --

2            MS. MCKENZIE:   THAT HAVE NO VALUE BASICALLY.

3            THE COURT:   -- THERE'S REALLY NO DISPUTE ABOUT THAT.

4    YES.

5            MS. MCKENZIE:   BUT THE DEFENSE WELL KNOWS THAT.   AND

6    IF THEY WANT TO RESERVE IT, THAT'S FINE.   THE AMOUNT OF LOSS WE

7    DO BELIEVE IS JUST UNDER A MILLION DOLLARS, SO THAT IS SOMETHING

8    THAT IF IT EXCEEDS A MILLION, THEN THAT'S A REAL GOOD THING THAT

9    THEY ARE -- HAVE PRESERVED TO APPEAL.   BUT -- AND SOPHISTICATED

10   MEANS, WE'RE NOT CONCEDING THAT THERE WASN'T SOPHISTICATED MEANS

11   HERE, BUT THEY WANT A SEPARATE COURT TO REVIEW THAT, SO WE

12   AGREED TO ALLOW THOSE -- TO CARVE OUT THOSE --

13           MR. LOVELL:   WE'RE NOT CERTAIN, JUDGE, WE WANT A

14   SEPARATE COURT TO REVIEW THAT.   WE'RE HOPEFUL THAT WE WON'T HAVE

15   TO GO BEYOND THIS COURT.   BUT IT'S -- MS. WINN -- AND I PROMISED

16   HER I WOULD SPEND TIME WITH HER AND LOOK OVER EACH OF THE

17   ALLEGED VICTIMS AND HAVE THE OPPORTUNITY TO CONTEST THEM IF WE

18   DISAGREE AND WE CAN DEMONSTRATE TO THE COURT OTHERWISE.   IF NOT,

19   I SUSPECT WE'LL ABANDON THAT.

20   BY THE COURT:

21   Q.   DO YOU HAVE ANY QUESTIONS, MS. WINN, THAT YOU WANT TO ASK

22   ME NOW?   RECOGNIZING THAT YOU'LL HAVE A CHANCE TO EXPLAIN ALL OF

23   THIS AT SENTENCING, IS THERE ANYTHING YOU WANT TO --

24   A.   NO, SIR.

25           THE COURT:   NO.   FROM EVERYTHING THAT YOU HAVE SAID,

 1  MS. WINN, AND WHAT I'VE LEARNED FROM THE GOVERNMENT AND YOUR

 2  LAWYER, I'M SATISFIED TO SAY THAT YOU ARE PLEADING GUILTY TO

 3  THIS INFORMATION FREELY AND VOLUNTARILY.  YOU DO UNDERSTAND YOUR

 4  LEGAL RIGHTS.  YOU KNOW YOU HAVE A RIGHT TO A JURY TRIAL.

 5  YOU'VE BEEN THROUGH ALL THIS BEFORE.  YOU UNDERSTAND THAT,

 6  EXCUSE ME, THE ELEMENTS OF THIS CASE, THE CHARGE AGAINST YOU,

 7  AND YOU AGREE IN ESSENCE TO THE FACTUAL BASIS SET FORTH BY THE

 8  GOVERNMENT WHICH WOULD ESTABLISH YOUR GUILT IN THIS CASE, AND,

 9  THEREFORE, I ACCEPT YOUR PLEA OF GUILTY THIS MORNING AND I FIND

10  YOU GUILTY AS CHARGED IN THE INFORMATION.  MS. COALSON WILL GIVE

11  US A PROPOSED SENTENCING DATE.

12          COURTROOM DEPUTY CLERK:  TUESDAY, MAY 12TH AT 10:00.

13          MS. MCKENZIE:  AND THE GOVERNMENT'S ALSO OFFERING

14  EXHIBITS 1 THROUGH 5 IF WE COULD HAVE THOSE ADMITTED.

15          THE COURT:  THAT WILL BE FINE.  IF YOU'LL JUST HAND

16  THAT TO MS. COALSON.  THAT'S MAY THE WHAT?

17          COURTROOM DEPUTY CLERK:  12TH.

18          THE COURT:  MAY THE 12TH.  IF, OF COURSE, YOU KNOW,

19  SHE'S TRYING TO COOPERATE AND ALL THAT AND YOU NEED MORE TIME,

20  ANYTHING LIKE THAT, JUST LET US KNOW AND WE'LL SET IT OVER,

21  WHATEVER YOU ALL WANT TO DO.

22          MS. MCKENZIE:  CERTAINLY.  AND THE COURT MAY HAVE MADE

23  THIS FINDING, BUT IF NOT, IF YOU COULD STATE FOR THE RECORD THAT

24  YOU HAVE FOUND HER TO HAVE VIOLATED SUPERVISED RELEASE.  I KNOW

25  THAT SHE HAS AND THAT IT'S HEREBY REVOKED --

1         THE COURT:  YOU'RE RIGHT.  YOU'RE RIGHT.  SHE ADMITTED

2   THE ESSENTIAL ALLEGATIONS OF THE PETITION TO REVOKE HER

3   SUPERVISED RELEASE.  SHE ADMITS IT.

4      AND THE COURT FINDS, MS. WINN, THAT YOU DID IN FACT VIOLATE

5   THE TERMS OF YOUR SUPERVISED RELEASE.  AND THE DISPOSITION OF

6   THAT WILL COME AT THE SAME TIME AS THE SENTENCE IN THE MAIN

7   CASE.

8         MS. MCKENZIE:  THANK YOU, YOUR HONOR.

9         THE COURT:  YOU ARE WELCOME.  IS THERE ANYTHING ELSE?

10  LET ME SEE.  I'M GOING TO HAND ALL THIS BACK TO MS. COALSON.  IS

11  THERE ANYTHING ELSE THAT WE NEED TO TAKE UP?

12     WELL, LET ME JUST SAY THIS, MS. WINN:  YOU WILL BE DEALING,

13  OF COURSE, WITH YOUR PROBATION SUPERVISOR TO GET THE

14  INVESTIGATION GOING AND YOU'LL STAY IN TOUCH WITH MR. LOVELL IN

15  CASE WE HAVE TO CHANGE THE DATE OF YOUR HEARING ON THIS.

16     WHAT ELSE IS THERE?  ANYTHING ELSE?

17        MS. MCKENZIE:  NO, YOUR HONOR.  THANK YOU.

18        THE COURT:  THANK YOU VERY MUCH.  WE'RE AT RECESS AT

19  THIS TIME.

20        MR. LOVELL:  THANK YOU.

21            (PROCEEDINGS ADJOURNED.)

22

23

24

25

```
1
2                        C E R T I F I C A T E
3
4   UNITED STATES OF AMERICA
5   NORTHERN DISTRICT OF GEORGIA
6        I, MONTRELL VANN, CCR, CSR, RPR, RMR, CRR, OFFICIAL COURT
7   REPORTER OF THE UNITED STATES DISTRICT COURT, FOR THE NORTHERN
8   DISTRICT OF GEORGIA, DO HEREBY CERTIFY THAT THE FOREGOING 31
9   PAGES CONSTITUTE A TRUE TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE
10  SAID COURT, HELD IN THE CITY OF ATLANTA, GEORGIA, IN THE MATTER
11  THEREIN STATED.
12       IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS, THE
13  15TH DAY OF JUNE 2009.
14
15
16                               _____
                                 MONTRELL VANN, CCR,CSR,RPR,RMR,CRR
17                               OFFICIAL COURT REPORTER
                                 UNITED STATES DISTRICT COURT
18
19
20
21
22
23
24
25
```